**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JUAN PABLO RIOJAS, | : | Civil No. 3:20-CV-00202 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| MARK GURMAN, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is a petition for habeas corpus pursuant to 28 U.S.C. § 2254 filed by Juan Pablo Riojas.  (Doc. 1.)  For the reasons set forth below, the court will dismiss the petition.

### **PROCEDURAL HISTORY**

Juan Pablo Riojas ("Petitioner") is a self-represented litigant who filed a petition for writ of habeas corpus seeking relief from his state court judgment with this court in February of 2020.  (Doc. 1.)  Petitioner was released from the State Correctional Institute in Mercer in May of 2022.  (Doc. 13.)

The procedural history of Petitioner's state criminal convictions and subsequent appeals are properly summarized in the memorandum entered by the Court of Common Pleas of Franklin County on August 22, 2019.  (Doc. 11-2, pp. 16–22.)[1]  The court will provide the following brief summary: Petitioner was found

---

[1] For ease of reference the court utilizes the page numbers from the CM/ECF header.

guilty of two counts of rape, one count of false imprisonment, one count of

terroristic threats, one count of simple assault, and one count of intimidation of a

witness on March 4, 2014, following a jury trial. (*Id.*, p. 21.)  Petitioner filed a

post-sentence motion, which was denied by the state court. (*Id.*)  Petitioner then

filed a direct appeal challenging the admission of the Commonwealth's expert

witness, the admission of prior bad acts testimony, the trial court's denial of his

motion for judgment of acquittal, the trial court's granting of the Commonwealth's

motion to quash, the trial court's denial of a defense DNA expert, and the court's

denial of Appellant's motion for continuance of trial due to the absence of a

necessary witness. (Doc. 11-2, p. 21.)  On September 7, 2016, the Superior Court

affirmed the judgment of sentence. (Doc. 11-2, pp. 21–22); *Commonwealth v.*

*Riojas*, 158 A.3d 169, 2016 WL 5940424 (Pa. Super. Sep. 7, 2016).

On August 9, 2018, Plaintiff filed a PCRA petition raising sixteen issues.

*Commonwealth v. Riojas*, 1530 MDA 2018, 2019 WL 3969507 (Pa. Super. Aug.

22, 2019.)  On July 19, 2018, the PCRA court issued an opinion detailing why

none of Petitioner's sixteen issues entitled him to relief. *Id.*  Petitioner timely filed

a notice of appeal and filed a Pa.R.A.P. 1925(b) concise statement of errors

complained of on appeal raising three new issues. *Id.*  These three issues were

dismissed by the PCRA court, finding two to be factually inaccurate and the third

to be waived for failure to raise the claim in response to its 907 notice. *Id.*

Plaintiff then filed an appeal addressing three issues: (1) the dismissal of his PCRA petition as untimely; (2) the requirement to file under the sex offender registration and notification act (SORNA); and (3) ineffective assistance of counsel. (Doc. 12-2, pp. 23–40.) The Superior Court detailed that Plaintiff's PCRA petition was not dismissed as untimely, but fully adjudicated. (*Id.*, p. 24.) The SORNA challenge was deemed to be waived because it was not raised before the PCRA court. (*Id.*, pp. 24–25.) The Superior Court found Petitioner's claims of ineffective assistance of counsel to lack merit. (*Id.*, pp. 25–40.)

Petitioner filed the instant habeas corpus action raising four issues under the Fourteenth Amendment:  (1) that the Court of Common Pleas erred when it admitted Dr. Valliere as an expert; (2) that the Court of Common Pleas erred when it permitted the victim to testify about Petitioner's prior bad acts; (3) that the Court of Common Pleas erred when it denied his sufficiency of the evidence claims with regard to the rape by forcible compulsion and false imprisonment counts; and (4) that the Court of Common Pleas erred when it denied his motion for continuance in order to procure the testimony of a "necessary defense witness." (Doc. 1.) Petitioner also alleges that he did not receive effective assistance of counsel. (*Id.*) Finally, Petitioner claims that his sentence requiring him to register as a sexual offender under Pennsylvania SORNA is illegal and violates the *ex post facto* clause of the United States Constitution. (*Id.*)

## VENUE

Under 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus under Section 2254 can be filed in either the district where the petitioner is in custody, or in the district where the petitioner was convicted and sentenced.  28 U.S.C. § 2241(d).  Plaintiff was convicted and sentenced in Franklin County, Pennsylvania, which is located in this district.

## STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism. *See Engle v. Isaac*, 456 U.S. 107 (1982).  "The States possess primary authority for defining and enforcing the criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Id.*  States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2254(a).  If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

**DISCUSSION**

### A. Petitioner's SORNA Claim is Procedurally Defaulted, but the Remaining Grounds for Relief Have Been Exhausted in the State Courts.

The court must first determine whether Petitioner's grounds for relief presented in his § 2254 petition have been exhausted in the state courts and, if not, whether circumstances exist to excuse Petitioner's procedural default of his claims.

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus unless the petitioner has satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b).  Under § 2254(c), a petitioner will not be deemed to have exhausted his available state remedies if he had the right under the law of the state to raise, by any available procedure, the question

presented.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, (1999).  A petitioner may

exhaust a federal claim either by raising it on direct appeal or presenting it in post-

conviction PCRA proceedings.  *See id.* at 845.  In addition, a claim is exhausted

when it has been "fairly presented" to the state court.  *See Picard v. Connor*, 404

U.S. 270, 275 (1971).  To that end, the federal habeas claim "must be the

substantial equivalent of that presented to the state courts."  *See Lambert v.*

*Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).  The petition must do so "in a manner

that puts [the respondents] on notice that a federal claim is being asserted."  *See*

*Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005).  "The Supreme Court has

instructed that a claim is not 'fairly presented' if the state court 'must read beyond

a petition or brief. . . in order to find material' that indicates the presence of a

federal claim."  *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir.

2014) (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)).  Moreover, a habeas

corpus petitioner has the burden of proving the exhaustion of all available state

remedies.  *See* 28 U.S.C. § 2254.  Overall, the exhaustion requirement advances

the goals of comity and federalism, while reducing "piecemeal litigation."  *See*

*Duncan v. Walker*, 533 U.S. 167, 180 (2001).

"When a claim is not exhausted because it has not been 'fairly presented' to

the state courts, but state procedural rules bar the applicant from seeking further

relief in state courts, the exhaustion requirement is satisfied because there is an

absence of available State corrective process." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).  Claims deemed exhausted because of a state procedural bar are considered to be procedurally defaulted.  *See, e.g.*, *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000).  The district court then analyzes the claims under the procedural default doctrine.  *See id.*  The purpose of this rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court.  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

Respondents have stated that "Petitioner was in compliance with the jurisdictional requirements for his claims in the Commonwealth of Pennsylvania," and proceeded to address his claims on the merits.  (Doc. 11, p. 10.)  However, a review of the state court determinations has shown that Plaintiff's SORNA claim has been procedurally defaulted.

Petitioner claims in this habeas matter that his sentence requiring him to register as a sexual offender under Pennsylvania SORNA is illegal and violates the *ex post facto* clause of the United States Constitution.  (Doc. 1, p. 8.)  The Superior Court found that Petitioner had waived this argument, and then added a footnote addressing the merits of Petitioner's claim by finding it moot:

> In any event, Appellant's substantive claim lacks merit.  He remains incarcerated, serving the sentence imposed at this case.  Therefore, Appellant has never registered as a sexual offender.  Additionally, SORNA has been replaced by Act 29, so he will not be required to register under SORNA in the future. *See* 42 Pa.C.S. § 9799.52.  As such, Appellant's argument is moot.

7

*Commonwealth v. Riojas*, 2019 WL 3969507, at *4 n. 6.  Regardless of the text of the footnote, the Superior Court held that Petitioner had "failed to raise the issue in his *pro se* PCRA petition and neglected to file a response to the PCRA court's Pa.R.Crim.P. 907 notice of dismissal."  Therefore, this claim is procedurally defaulted.

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice."  *See Coleman*, 501 U.S. at 750.  Therefore, the Superior Court's finding that the issue is moot would negate any of these exceptions to procedural.

This court agrees with the Superior Court's finding that the SORNA I issue is moot.  By way of brief statutory background, in 2004, the General Assembly enacted what is commonly known as Megan's Law III, *formerly* 42 Pa.C.S. §§ 9791-9799.9, which remained in effect until the enactment of the Sexual Offender Registration and Notification Act (SORNA I), 42 Pa.C.S. §§ 9799.10-9799.41, in 2012.  SORNA I took effect on December 20, 2012.[2]  On July 19, 2017, the

---

[2] Petitioner's crimes took place in October of 2012.  Therefore, Petitioner argues that SORNA I was not in effect at the time he committed the crimes.  (Doc. 6, p. 39.)

Pennsylvania Supreme Court decided *Commonwealth v. Muniz*, 640 Pa. 699, 164 A.3d 1189 (2017), in which it held that a portion of SORNA I violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions by increasing registration obligations on certain sex offender registrants.  Thereafter, in 2018, to clarify that sex offender registration provisions were not *ex post facto* punishment, the General Assembly enacted SORNA II, also known as Act 29.  SORNA II divided offender registration and reporting requirements into two distinct subchapters.  Subchapter H applies to "individuals who committed a sexually violent offense on or after December 20, 2012, for which the individual was convicted[,]" 42 Pa. C.S. § 9799.11(c), and Subchapter I applies to individuals who committed a sexually violent offense "on or after April 22, 1996, but before December 20, 2012," and whose period of registration has not yet expired or whose registration requirements under a former sexual offender registration law have not expired. 42 Pa. C.S. § 9799.52.

Petitioner continues to rely on the holding in *Muniz* as it pertains to SORNA I in his briefing, and ignores SORNA II despite the fact that Subchapter I of SORNA II applies to him.  (Doc. 6, pp. 38–45.)  Therefore, his argument regarding SORNA I is moot and any exceptions to procedural default doctrine are inapplicable.  Therefore, this claim is dismissed.

**B. Petitioner's Remaining Claims Can Not Succeed on the Merits.**

Under the AEDPA, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citation omitted).  The burden is on Petitioner to prove entitlement to the writ. *Id*.

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme

Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  The Third

Circuit summarized Supreme Court findings as follows:

> [A] state court decision reflects an "unreasonable application of such
> law" only "where there is no possibility fairminded jurists could
> disagree that the state court's decision conflicts with [the Supreme]
> Court's precedents," a standard the Supreme Court has advised is
> "difficult to meet" because it was "meant to be." [*Harrison v.*] *Richter*,
> 562 U.S. 86, [ ] 102, 131 S.Ct. 770.  As the Supreme Court has
> cautioned, an "unreasonable application of federal law is different from
> an incorrect application of federal law," *Richter*, 562 U.S. at 101, 131
> S.Ct. 770 (quoting *Williams*, 529 U.S. at 410, 120 S.Ct. 1495), and
> whether we "conclude[ ] in [our] independent judgment that the
> relevant state-court decision applied clearly established federal law
> erroneously or incorrectly" is irrelevant, as AEDPA sets a higher bar.
> *Williams*, 529 U.S. at 411, 120 S.Ct. 1495.

*Mathias v. Superintendent Frackville, SCI*, 876 F.3d 462, 476 (3d Cir. 2017).

A decision is based on an "unreasonable determination of the facts" if the

state court's factual findings are objectively unreasonable in light of the evidence

presented to the state court.  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Section 2254(e) provides that "[i]n a proceeding instituted by an application for a

writ of habeas corpus by a person in custody pursuant to the judgment of a State

court, a determination of a factual issue shall be presumed to be correct.  The

applicant shall have the burden of rebutting the presumption of correctness by clear

and convincing evidence."  28 U.S.C. § 2254(e)(1).

### 1. Fourteenth Amendment Claims

Petitioner filed the instant habeas corpus action raising four issues under the Fourteenth Amendment:  (1) that the Court of Common Pleas erred when it admitted Dr. Valliere as an expert; (2) that the Court of Common Pleas erred when it permitted the victim to testify about his prior bad acts; (3) that the Court of Common Pleas erred when it denied his sufficiency of the evidence claims with regard to the rape by forcible compulsion and false imprisonment counts; (4) and that the Court of Common Pleas erred when it denied his motion for continuance in order to procure the testimony of a "necessary defense witness."  (Doc. 6, p. 24–37.)

The Superior Court addressed these four issues in depth:

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the trial court, we conclude that there is no merit to the issues Appellant has raised on appeal.  The trial court opinions properly dispose of the questions presented.  (*See* Trial Ct. Op., 10/24/14, at 11-22 (finding motion for judgment of acquittal properly denied where evidence was sufficient to support convictions of rape by forcible compulsion and false imprisonment); Trial Court Opinion, 1/02/15, at 12-21, 25 (finding (1) Dr. Valliere was qualified as expert in field of victim behavior for victims in sexual violence and abuse settings pursuant to 42 Pa.C.S.[A.] § 5920(b)(1) and Pa.R.E. 702(a); (2) Dr. Valliere's testimony was relevant and helpful to jury; (3) field of victim behavior in sexual violence and abuse settings is not novel, and therefore not subject to analysis under *Frye*; (4) prior bad acts evidence more probative than prejudicial where it formed part of history and natural development of events and offenses for which Appellant was charged; (5) Appellant waived continuance issue where concise statement was too vague to

allow court to address its merits.[footnote 3]))   Therefore, we affirm on the basis of the trial court's opinions.

[Footnote 3:] We observe that Appellant's brief fails to identify the proposed witness who allegedly would have testified if the continuance had been granted. (*See* Appellant's Brief, at 26-29).   Appellant alleges that previous counsel failed to identify this individual in the continuance motion because "he/she feared testifying against [the] victim ...." (*Id.* at 26 n.3).   He vaguely states that, "on Sunday, February 23, 2014, [he] became aware of a witness that was told by the alleged victim in the case at bar, that she [the victim] was lying about everything so she could get status in the United States of America and gain full custody of her children."   (*Id.* at 26) (footnote omitted). However, this vague statement about an alleged unnamed source does not support a conclusion that the trial court abused its wide discretion in denying Appellant's continuance request where he fails to demonstrate "prejudice or a palpable and manifest abuse of discretion." ***Hansley, supra*** at 418 (citations omitted).   Therefore, even if not waived, Appellant's fourth issue would not merit relief.

*Commonwealth v. Riojas*, No. 2038 MDA 2015, 2016 WL 5940424 at *2.

### i.   Testimony of Commonwealth Expert, Dr. Valliere

Petitioner alleges that allowing a medical expert, Dr. Valliere, to testify regarding counterintuitive victim behavior was contrary to and an unreasonable determination of clearly established federal law.  (Doc. 6, p. 33.)   Specifically, Petitioner alleges that counterintuitive victim behavior is "new science," and should not have been admissible.  (*Id.*)  Petitioner asserts that the Commonwealth's use of the *Frye* standard is contrary to and an unreasonable determination of clearly established federal law.

This court acknowledges that Pennsylvania does not adhere to the test for admissibility of expert testimony established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[3]  In *Commonwealth v. Topa*, 369 A.2d 1277 (Pa. 1977), the Supreme Court adopted the test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and in *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1044 (Pa. 2003), a majority of the Pennsylvania Supreme Court flatly rejected *Daubert* and affirmed the validity of *Frye.*  "After *Daubert* was decided, a number of state courts adopted the *Daubert* standard.  We, however, have continued to follow *Frye*."  *Grady*, 839 A.2d at 1044.  Whereas the *Daubert* standard charges trial courts with the responsibility of acting as "gatekeepers" to exclude all unreliable expert testimony, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (interpreting *Daubert*), through the application of a non-exclusive checklist of reliability factors, *Daubert*, 509 U.S. at 594–95, the *Frye* standard merely requires that the expert testimony "have gained general acceptance in the particular field in which it belongs."  *Frye*, 293 F. at 1014.  This is reflected in the comment section of the Pennsylvania Rules of Evidence Rule 702:

> Pa.R.E. 702(c) differs from F.R.E. 702 in that it reflects Pennsylvania's adoption of the standard in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).  The rule applies the "general acceptance" test for the admissibility of scientific, technical, or other specialized knowledge

---

[3]In *Daubert*, the United States Supreme Court held that *Frye* was superseded in the federal courts by the adoption of the Federal Rules of Evidence.  *Daubert, supra*, at 587.

> testimony. This is consistent with prior Pennsylvania law.  *See Grady v. Frito-Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038 (2003).  The rule rejects the federal test derived from *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Pa.R.E. 702.

This court has no authority to review the Superior Court's decision because it was adjudicating a state law claim that is not cognizable under § 2254(a).  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Although Petitioner now asserts that the trial court's decision violated his due process rights, he cannot repackage a state law claim into a federal due process claim simply by stating that he was denied a fair trial based upon a ruling of state law.  *See, e.g., Johnson v. Rosemeyer*, 117 F.3d 104, 109–10 (3d Cir. 1997).

### ii.  Testimony of Prior Bad Acts

Petitioner argues that the trial court's allowance of testimony of his prior bad acts more then four years prior to the alleged criminal conduct was contrary to and an unreasonable determination of clearly established federal law.  (Doc. 6, p. 34.)  In doing so, Plaintiff acknowledges this court's lack of authority to review a state court's decision that was adjudicated on a state law claim and cites to *Estelle*.  (*Id.*)  He then presents a litany of federal cases from the Sixth and Eighth Circuits that he

alleges grant this court authority to review a state court's decision regarding testimony of prior bad acts.  (*Id*., pp. 34–35.)

At the crux of Petitioner's argument is that the admission of prior bad acts evidence led to "the overriding concern that such evidence blackened the character of Riojas, and resulted in a great prejudice painting him as a so to say wife beater." (*Id*.)  Plaintiff, however, failed to identify clearly established Supreme Court precedent that such evidence of prior bad acts constitutes a violation of due process.  *See Estelle*, 502 U.S. at 75 n.5 ("We express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").  The state court addressed Plaintiff's argument and relied on state law.

Next, the court turns to a panel decision from the Third Circuit that highlights the fact that some forms of evidence of prior bad acts is allowed under the Federal Rules of Evidence and no circuit court has found that the allowance of such evidence violates due process:

> Moreover, the Federal Rules of Evidence expressly allows such testimony in sex crime cases.  In fact, Federal Rules of Evidence 413 and 414 provide that when a criminal defendant is accused of child molestation or sexual assault, "the court may admit evidence that the defendant committed any other child molestation" or sexual assault, and "[t]he evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413, 414.  No Court of Appeals which has considered the constitutionality of Fed. R. Evid. 413 or 414 has concluded that they violated due process, see United States v. Schaffer, 851 F.3d 166, 177 n.56 (2d Cir. 2017) (collecting cases across Courts

of Appeal, all of which have held that Rule 413 or 414 do not violate the Due Process Clause), and the Supreme Court has not deemed either rule unconstitutional. Thus, Allison cannot successfully claim that admitting the prior bad acts evidence as propensity evidence is in itself "contrary to" or an improper application of clearly established federal law.

*Allison v. Superintendent Waymart SCI*, 703 Fed. Appx. 91, 97 (3d Cir. 2017.)

Under Pennsylvania law, "[t]he admission of evidence of prior bad acts is solely within the discretion of the trial court, and the court's decision will not be disturbed absent an abuse of discretion." *Commonwealth v. Patterson,* 91 A.3d 55, 68 (Pa. 2014), *cert. denied,* 135 S.Ct. 1400 (2015) (citation omitted) *abrogated on other grounds by Commonwealth v. Yale,* 249 A.3d 1001 (Pa. 2021). Again, this court has no authority to review the Superior Court's decision because it was adjudicating a state law claim that is not cognizable under § 2254(a). As stated above, Petitioner now asserts that the trial court's decision violated his due process rights, but he cannot repackage a state law claim into a federal due process claim simply by stating that he was denied a fair trial based upon a ruling of state law. *See, e.g., Johnson*, 117 F.3d at 109–10.

### iii. Sufficiency of Evidence Claims

Next, the court will address Petitioner's argument that the trial court erred in denying his motion for judgment of acquittal as it related to the charges of rape and false imprisonment where insufficient evidence was presented at trial to sustain the convictions for such crimes. (Doc. 1, pp. 21–22; Doc. 6, pp. 24–30.)

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the United States Supreme Court set the standard for a due process claim based on sufficiency of the evidence. Pursuant to *Jackson*, a habeas petitioner alleging that evidence is insufficient to support a conviction must persuade the Court that the evidence, viewed in a light most favorable to the prosecution, could not move a rational trier of fact to find guilt beyond a reasonable doubt. *Id.* at 319, 324. Review of the evidence must be based upon state law; that is, the ultimate question is whether the prosecution provided evidence to support the substantive elements of the offense as defined by state law. *Id.* at 324 n.16.

Under the AEDPA, review for sufficiency of the evidence means a determination whether the state court disposition was an objectively unreasonable application of the *Jackson* standard or its state court equivalent. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 379–390 (2000); *Evans v. Court of Common Pleas, Delaware County*, 959 F.2d 1227, 1233 (3d Cir. 1992) (sufficiency standard is same under Pennsylvania and federal law); *Jackson*, 443 U.S. at 319 (court reviewing sufficiency of evidence must determine whether evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in light most favorable to Commonwealth as verdict winner, is sufficient to support all elements of crime beyond a reasonable doubt); *Commonwealth v. Wilson*, 2003 Pa. Super. 205, 825 A.2d 710, 713 (Pa. Super. 2003) (same); *Commonwealth v. Hopkins*,

2000 Pa. Super. 47, 747 A.2d 910, 914 (Pa. Super. 2000) (matters of credibility, reliability, or weight of the evidence are within the sole province of the fact-finder, who is free to believe all, part, or none of the evidence presented).

In addressing this issue, the courts' analysis is frustrated by a lack of the record and transcript before the court. Petitioner is required to produce the part of the record pertinent to a determination of the sufficiency of the evidence. But federal law recognizes an inmate may have difficulty doing so, and the burden can be placed on the respondent:

> If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination. If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official. If the State cannot provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination.

28 U.S.C. § 2254(f). Petitioner did not produce the record or the transcripts with this petition. The court twice directed Respondents to produce the transcripts in this case in accord with Rule 5 of the Rules which apply to habeas corpus proceedings. (Docs. 14, 15.) Respondents failed to produce the transcripts. Despite this failure, relevant portions of the transcripts were set forth in the state court rulings, which were relied upon in making the following determinations.

19

### a. Rape Conviction

The court will first address Petitioner's sufficiency of the evidence argument in regards to the rape conviction. Rape, a felony of the first degree, occurs when a person engages in sexual intercourse with a complainant by forcible compulsion. 18 Pa.C.S.A. § 3121 (a)(1). Sexual intercourse is physical sexual contact between individuals involving the genitalia of at least one person. *See Commonwealth v. Kelley*, 599 Pa. 179, 801 A.2d 551 (2002). "[S]ome penetration however slight" is required to establish "sexual intercourse," however, emission is not required. 18 Pa.C.S.A. § 3101. "Forcible compulsion" includes physical force as well as moral, psychological, or intellectual force, used to compel a person to engage in sexual intercourse against that person's will. *Id. See Commonwealth v. Riley*, 643 A.2d 1090 (Pa. Super. 1994); *see also Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986).

Whether forcible compulsion will be found is a determination based on the totality of the circumstances. *See Commonwealth v. Smolko*, 666 A.2d 672 (Pa. Super. 1995). Factors to be considered include the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting where the incident took place, along with the defendant's relative position of authority, domination, or custodial control over the victim and the degree of duress felt by the victim. *See Smolko*, 666 A.2d at 676; *see also Commonwealth v. Price*,

616 A.2d 681 (Pa. Super. 1992) (forcible compulsion found where the victim was asleep when attacked but woke up and struggled with her attacker).  Where a defendant uses physical force, the threat of physical force, or psychological coercion, the "forcible compulsion" component has been established.  *See* 18 P.A. C.S.A. § 3121(a)(1).  The degree of force required depends on the totality of the facts and circumstances of the particular case.  *See Commonwealth v. Riley*, 643 A.2d 1090 (Pa. Super. 1994) (forcible compulsion found where victim refused to have intercourse, but attacker compelled her to do so by laying on top of her and pinning her with his body weight thwarting her attempts to resist and penetrating her).  The victim need not resist a person trying to force sexual intercourse against her will.  *See id.* at 1091.

"A person who has indecent contact with the complainant or causes the complainant to have indecent contact with the person is guilty of indecent assault if: (1) the person does so without the person's consent; [or] (2) the person does so by forcible compulsion."  18 Pa.C.S.A § 3126.  Indecent contact is defined as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S.A. § 3101.

Petitioner asserts that testimony from the nurse who conducted the rape kit stating that the small fissures in the labia minora indicated normal consensual intercourse is inconsistent with forcible compulsion and inconsistent with the

victim's testimony.  (Doc. 1, p. 22; Doc. 6, p. 29–30.)  The transcripts of the court proceedings are not available to the court, but the Superior Court's 2016 decision includes an excerpt of the nurse's testimony from the trial transcripts:

> Nancy Bates conducted a sexual assault forensic examination on Medellin on October 10, 2012. During the exam Ms. Bates took note of braising "to the left side of her face and her right eye and on her breasts that there was the right side bruising and then right hand bruise over two joints at fifth and fourth digit where finger connects to hand."  Ms. Bates explained the stages of colors regarding bruising:
>
> Q. With bruises, can you explain—bruises change colors, don't they?
>
> A. Yes, they do.
>
> Q. So what color does a bruise start at when you very first get a bruise and it shows up on your skin?
>
> A. It's usually red.
>
> Q. And then what does it go to?
>
> A. Like a blue purple color.
>
> Q. At what point does it reach green?
>
> A. By about day seven.
>
> Ms. Bates also noted that there were fissures in the labia minora which indicated to her that there was some kind of penetration to Medellin's vaginal area.  She explained that the more fissures the more forceful the penetration, but that the fissures could be from consensual sex or any kind of sex:
>
> Q. Thank you. If the fissures—the fissures, those little cuts to her labia, you said they indicate penetration?
>
> A. That's correct.

Q. And that could be from consensual sex?

A. It could be from any kind of sex.

In referring to the damage to Medellin's chest purportedly caused by Appellant with the knife, Ms. Bates called it a "scratch" which she described as "more superficial whereas a cut may indicate that it's deeper."

*Commonwealth v. Riojas*, 2016 WL 5940424, at *21–22.

Petitioner's argument rests on the assumption that forcible compulsion requires great force. He proceeds from that assumption to argue that the evidence fails to support a finding that great force was used, and therefore the evidence was not sufficient to sustain this conviction. However, the definition of forcible compulsion does not require great force. *See* 18 P.A. C.S.A. § 3121(a)(1). Here, the testimony of nurse does not preclude a finding by the jury that the elements of rape were established. The Superior court likewise rejected Petitioner's sufficiency of the evidence claim, stating:

Defendant argues that Medellin's testimony as to both rapes is inconsistent with the testimony of Ms. Bates and therefore the evidence is not sufficient to sustain convictions for rape. We disagree. Ms. Bates' testimony does not preclude a finding that the elements of rape were established by the Commonwealth. She testified that she conducted a sexual assault forensic examination of Medellin on October 10, 2012. During the examination she noted fissures in the labia minora which indicated that there was some kind of penetration to the vaginal area. Defendant argues that Ms. Bates stated that the type of fissures that Medellin had are caused by consensual sex. We disagree with Defendant's interpretation of the testimony. Ms. Bates testified that while the fissures could be caused by consensual sex, they could

also be caused "from any kind of sex." A reasonable inference from such testimony would indicate that the fissures could be caused from consensual sex or rape. In this case the jury obviously believed the fissures were caused from the latter. Defendant also argues that there would have been more fissures because "[t]he rapes Medellin described were with great force . . ." and Ms. Bates testified that more fissures are consistent with more forceful penetration. Again, we disagree with Defendant's view of the facts. Medellin's testimony does not describe Defendant as using "great force," nor is great force required to sustain a conviction of forcible compulsion rape. As we already discussed, the threat of force and psychological coercion were the means used by Defendant to commit the forcible compulsion rapes. The jury's finding of guilt on both counts of rape is not inconsistent with Ms. Bates' testimony.

*Commonwealth v. Riojas*, 2016 WL 5940424, at *11. This court agrees.

### b.  False Imprisonment Conviction

Next, the court will address Petitioner's sufficiency of the evidence claim as to the false imprisonment conviction. Petitioner alleges that there was "insufficient evidence presented at trial that the victim was restrained to the point that her liberty was interfered with in an ample and considerable manner." (Doc. 1, p. 21.) Specifically, Petitioner alleges that evidence that the victim attended work and was home alone during the period of her alleged false imprisonment demonstrates that there was not sufficient evidence to support the conviction. (Doc. 6, pp. 26–28.)

The Superior Court of Pennsylvania has summarized the elements of false imprisonment:

18 Pa.C.S.A. § 2903, entitled false imprisonment, provides that "[a] person commits an offense if he knowingly restrains another unlawfully so as to interfere substantially with h[er] liberty." 18 Pa.C.S.A. §

24

2903(a).  In determining the magnitude of restraint necessary for false imprisonment, this Court has recognized that false imprisonment covers restraints which are less serious than those necessary for the offenses of kidnapping and unlawful restraint.  *See Commonwealth v. Prince,* 719 A.2d 1086 (Pa. Super.1998); *Commonwealth v. Wells,* 313 Pa.Super. 557, 460 A.2d 328 (1983). In determining whether the restraint at issue interfered with D.M.'s liberty "substantially," we give the word "substantially" its plain meaning.  1 Pa.C.S.A. § 1903 (words in a statute are to be construed according to rules of grammar and according to their common and approved usage). Thus, we determine the Legislature intended false imprisonment to cover restraints where an individual's liberty is interfered with in an ample or considerable manner.  *See* Merriam Webster's Collegiate Dictionary 1174 (10th ed.1997).

*In re M.G.*, 916 A.2d 1179, 1181–82 (Pa. Super. Ct. 2007.)

Again, this court does not have the record or the trial transcripts to review. However, evidence that the victim attended work and was home alone during the period of false imprisonment does not preclude a finding by the jury that the elements of false imprisonment were established.  This was found by the Superior Court in 2016:

The evidence sufficiently establishes that Defendant knowingly restrained Medellin so as to interfere with her liberty. According to Medellin's testimony Defendant broke into her apartment without invitation on October 4, 2012 and essentially lived there until October 9, 2012. Medellin testified that during that time Defendant beat her until she passed out, choked her, raped her twice, made her call or text him throughout the day when she was at work, and threatened to kill her if she did not do what he asked. When the facts are considered in totality Defendant interfered with Medellin's liberties "in an ample or considerable manner." When viewing the evidence in the light most favorable to the Commonwealth, the evidence suggests that Medellin was a prisoner in her own home. It is not unreasonable to conclude that Medellin had a very real fear of Defendant and that her liberty was

substantially restrained by Defendant from October 4 to October 9, 2012. Defendant argues that throughout that week Medellin was not falsely imprisoned because: she went to work; called and texted members of WIN and others; went to Lowes; was home alone while Defendant was working; and repeatedly called Defendant. However, when those facts are viewed through the lens of Dr. Valliere's counterintuitive behavior testimony they do not demonstrate freedom of movement. While it may not be readily apparent to a layperson as to why Medellin did not go to authorities or leave her apartment, with the benefit of Dr. Valliere's testimony it is clear that such behavior is consistent with the behavior a victim of sexual abuse may display. Therefore, the evidence in its totality is sufficient to sustain conviction on the false imprisonment charge. Furthermore, for the same reasons the verdict of guilty is not contrary to the weight of the evidence.

*Commonwealth v. Riojas*, 2016 WL 5940424, at *13. Again, this court agrees.

### iv. Denial of Continuance

Petitioner alleges that the denial of a continuance to allow him to call a witness violated his Fourteenth Amendment rights. (Doc. 1, pp. 22–23.) Petitioner requested a continuance on February 27, 2014, after he claims that he became aware of a witness that was told by the victim that she was lying about everything so as to gain legal status in the United States and gain full custody of her children. (*Id*.) The Superior Court addressed Petitioner's claims as follows:

> Finally, as to Appellant's fourth question, we observe:

> > The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion. An abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is over-ridden or misapplied, or the result of partiality, prejudice, bias, or ill-will as shown by the evidence or the record. The grant

of a continuance is discretionary and a refusal to grant is reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated.

In reviewing a denial of a continuance, the appellate court must have regard for the orderly administration of justice, as well as the right of the defendant to have adequate time to prepare a defense.

*Commonwealth v. Riojas*, 2016 WL 5940424, at *2 *quoting Commonwealth v. Hansel*, 24 A.3d 410, 418 (Pa. Super. 2011).  In this instant habeas petition, Petitioner fails to allege any abuse of discretion on the part of trial court. Therefore, the court will not disturb the State Court's determination.

### 2.  Ineffective Assistance of Counsel Claims

Petitioner also alleges that he did not receive effective assistance of counsel. (Doc. 1, pp. 23–31.)  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend VI.  The purpose of the right to the assistance of counsel is to ensure a fair trial, and "the Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.'"  *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.*  "The Sixth Amendment guarantees reasonable competence, not

27

perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). The clearly established federal law as to an ineffective-assistance-of-counsel claim is *Strickland*, which sets forth the following two-prong analysis.

Under the first prong of *Strickland*, the petitioner must establish that counsel's performance was deficient. 466 U.S. at 687. "*Strickland's* first prong sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017). To establish that counsel's performance was deficient, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. As such, the court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance," *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689), and "[t]o overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances[,]'" *Pinholster*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 688). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

Under the second prong of *Strickland*, the petitioner must establish prejudice. *Strickland*, 466 U.S. at 687. To do so, the petitioner must show a reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The petitioner "need not prove that the evidence would have been insufficient if not for counsel's errors . . . [or] 'that counsel's deficient conduct more likely than not altered the outcome.'" *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 588 (3d Cir. 2015) (quoting *Strickland*, 466 U.S. at 693). Rather, the issue is whether there is a reasonable probability of a different result. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Harrington*, 562 U.S. at 112).

To prevail on an ineffective-assistance claim, a petitioner must satisfy both prongs of *Strickland*. A court can choose which prong of the standard to apply first, and it may reject an ineffectiveness claim on the ground that the petitioner was not prejudiced without addressing whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Premo v. Moore*, 562

U.S. 115, 122 (2011).  And "[e]stablishing that a state court's application of

*Strickland* was unreasonable under § 2254(d) is all the more difficult."

*Harrington*, 562 U.S. at 105.  When the state court has decided the claim on the

merits, "[t]he question 'is not whether a federal court believes the state court's

determination' under the *Strickland* standard 'was incorrect but whether that

determination was unreasonable—a substantially higher threshold.'"  *Knowles v.*

*Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S.

465, 473 (2007)).  "And, because the *Strickland* standard is a general standard, a

state court has even more latitude to reasonably determine that a defendant has not

satisfied that standard."  *Id.*

Here, Petitioner alleges eight deficiencies in support of his ineffective

assistance of counsel claim: (1) trial counsel stipulated to facts without his consent;

(2) trial counsel failed to produce certified transcripts and appellate counsel failed

to move for suppression of all transcripts; (3) appellate counsel failed to challenge

the sufficiency of the evidence; (4) trial counsel proceeded with the preliminary

hearing without a certified transcript of the proceeding being made; (5) trial

counsel failed to argue against the Commonwealth's motion to introduce evidence

of prior bad acts; (6) trial counsel failed to object to prosecutorial misconduct

following the introduction of a baseball bat into evidence at trial and appellate

counsel failed to appeal the production of this evidence; (7) trial counsel failed to

move for suppression of the victim's second statement made at the hospital and the physical evidence regarding the knife; and (8) trial counsel failed to object to the statements and affidavits that were translated and not properly signed by the translator. (Doc. 1, pp. 23–31.) In each argument, Petitioner set forth the facts of the alleged transgression, but failed to demonstrate that but for these transgressions there was a reasonable probability of a different result. (Doc. 1, pp. 23–31; Doc. 6, pp. 46–87.) Instead, Petitioner argues that he was prejudiced. (Doc. 6, pp. 46–87.) However, prejudiced or not prejudiced is not the standard. Rather, the issue is whether there is a reasonable probability of a different result. *Saranchak*, 802 F.3d at 588. Petitioner fails to establish such a reasonable probability.

Plaintiff once makes only vague assertions that a different result would have occurred. For example, he asserts that "ad counsel simply moved for a continuance until such time as a court reporter could be present the proceeding would have had a different outcome by a complete accurate, and certified transcript of the proceeding being made accurately presenting all testimony for use in subsequent proceedings including trial." (Doc. 6, p. 69.) But, in this instance, Plaintiff failed to state what testimony he intended to impeach had the transcript been made. (*Id*.) Such a vague assertion is insufficient. Each of the instances of ineffectiveness cited by Petitioner is similarly devoid of explanation of why it

would lead to a reasonable probability of a different result.  Therefore, the ineffective assistance of counsel claims cannot succeed.

### C. A Certificate of Appealability Will Not Be Issued.

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 237.  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the procedural disposition of this case debatable. Accordingly, no COA will be issued.

## CONCLUSION

For the reasons set forth above, the court will dismiss the petition for writ of habeas corpus will be dismissed.

A separate order will be issued.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: February 14, 2023